IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**JERRY D. COPLEY,**

    **Plaintiff,**

v.                                                  **CASE NO. 2:08-cv-000297**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Jerry Copley (hereinafter referred to as "Claimant"), protectively filed an application for DIB on October 7, 2003, alleging disability as of January 2, 2003, due to breathing, back, knee, left hand and shoulder impairments. (Tr. at 69-71, 91, 100.) The claim was denied initially and upon reconsideration. (Tr. at 49-52, 56-58.) On July 22, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 59.) The hearing was held on February 9, 2005,

before the Honorable Theodore Burock. (Tr. at 232-52.) By decision dated April 27, 2005, the ALJ denied benefits. (Tr. at 224-30.) The ALJ's decision became the final decision of the Commissioner on August 3, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 39-41.) Claimant filed suit in federal court (Tr. at 253-55) and on December 13, 2005, the case was remanded pursuant to the sixth sentence of 42 U.S.C. § 405(g) on uncontested motion for remand filed by the Commissioner. (Tr. at 257.)

On remand, the ALJ ordered additional psychological and physical examinations and held a hearing on June 6, 2007. (Tr. at 580-603.) At the conclusion of this hearing, the ALJ requested that Claimant's counsel obtain and submit records of pain management and treatment from Wendi Lundquist, D.O. (Tr. at 602.) The ALJ conducted a supplemental hearing on November 7, 2007. (Tr. at 604-23.) On January 14, 2008, the ALJ found that Claimant was disabled as of September 20, 2006, but not before. (Tr. at 11-23.) On May 8, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic obstructive pulmonary disease ("COPD"), lumbosacral disc disease, carpal tunnel syndrome, high blood pressure, cervical disc disease and borderline intellectual functioning. (Tr. at 13.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14.) The ALJ then found that prior to September 20, 2006, Claimant had the residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 15.) As a result, Claimant cannot return to his past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as hand packer/baker helper and bundle clerk/laundry helper, which exist in significant numbers in the national economy. (Tr.

at 21.)  On this basis, benefits were denied for the time period prior to September 20, 2006.  (Tr. at 22.)  The ALJ further determined that Claimant's condition deteriorated beginning September 20, 2006, when Seyed Adbi Ghodsi, M.D. conducted a neurosurgical consultation and, as a result, Claimant was entitled to disability benefits as of this date.  (Tr. at 20-22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was fifty-nine years old at the time of his alleged onset in 2003. (Tr. at 69.) Claimant has a ninth grade education. (Tr. at 238.) In the past, he worked in an underground coal mine. (Tr. at 89.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

In 2002, Claimant was diagnosed with mild carpal tunnel syndrome. (Tr. at 134.)

The record includes treatment notes from Ulysses D. Agas, M.D. dated February 15, 2002, through March 5, 2007. (Tr. at 179-96, 210-20, 340-63.) Beginning on November 7, 2003, Claimant complained of back pain, and thereafter, Dr. Agas consistently diagnosed chronic back pain. (Tr. at 179-84.)

On December 26, 2003, Claimant underwent a lumbar MRI, which showed a disc bulge at L4-5 with desiccation. (Tr. at 213.) There was no herniated nucleus pulposus or high grade central canal narrowing. Mild exit foraminal narrowing bilaterally was seen at L5-S1. (Tr. at 196.)

On June 23, 2004, a State agency medical source, Rafael Gomez, M.D., completed a Physical Residual Functional Capacity Assessment

6

and opined that Claimant could perform medium work, reduced by an occasional ability to climb ladders, ropes and scaffolds, a limited ability to handle and finger because of mild carpal tunnel syndrome, and a need to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. (Tr. at 198-204.)

On December 7, 2004, Dr. Agas opined that because of Claimant's chronic back pain, he could only occasionally lift ten pounds and frequently lift five pounds. Dr. Agas further opined that Claimant could only stand and/or walk for twenty to thirty minutes in an eight-hour workday and up to five minutes without interruption and sit up to thirty minutes in an eight-hour workday and up to fifteen minutes without interruption. Dr. Agas also opined that Claimant could never climb, stoop, crouch or crawl. Dr. Agas stated that Claimant's condition became disabling four to five years ago. (Tr. at 207-09.)

Dr. Agas continued to treat Claimant in 2004 and into early 2005, and his complaints of back pain persisted. (Tr. at 210-20.) On August 1, 2005, Claimant complained to Dr. Agas that he had back pain radiating down his legs. Dr. Agas diagnosed chronic back pain. (Tr. at 357.) On October 22, 2005, Claimant underwent an MRI, which showed a mild bulging disc at the L5-S1 level. (Tr. at 331.)

On May 19, 2005, John R. Atkinson, Jr. conducted a consultative mental examination at the request of Claimant's then

counsel.  He diagnosed major depressive disorder, recurrent, moderate, pain disorder with both psychological factors and general medical condition on Axis I and borderline intellectual functioning and compulsive personality traits on Axis II.  (Tr. at 299.)  Mr. Atkinson completed a Psychiatric Review Technique form on which he opined that Claimant had moderate restriction in activities of daily living and maintaining concentration, persistence and pace, mild difficulties maintaining social functioning and no episodes of decompensation.  (Tr. at 313.)

On April 6, 2006, Sara Wyer, M.A. examined Claimant at the request of the State disability determination service.  She diagnosed anxiety disorder, not otherwise specified, and depressive disorder, not otherwise specified on Axis I and made no Axis II diagnosis.  (Tr. at 514.)

On April 13, 2006, Stephen Nutter, M.D. examined Claimant at the request of the State disability determination service.  Dr. Nutter diagnosed chronic cervical and lumbar strain with no evidence of radiculopathy, shortness of breath (cause undetermined) and degenerative arthritis. Dr. Nutter noted that there were range of motion abnormalities of the cervical and lumbar spine, but that straight leg raising was negative.  There were no sensory abnormalities.  Reflexes were normal, and muscle strength testing was normal.  These findings were not consistent with nerve root compression.  (Tr. at 518.)

On May 9, 2006, a State agency medical source, Tasneem Doctor, Ed.S., Ed.D., completed a Psychiatric Review Technique form and opined that Claimant's anxiety disorder, not otherwise specified and depressive disorder, not otherwise specified resulted in moderate restrictions in activities of daily living, in maintaining social functioning and in maintaining concentration, persistence and pace. (Tr. at 527-40.)

On May 9, 2006, a State agency medical source, Fulvio Franyutti, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work. (Tr. at 541-48.)

Claimant underwent another MRI of his lumbar spine on August 5, 2006, which revealed that Claimant had a small central disc protrusion at L5-S1 with no evidence of a herniated nucleus pulposus at any visualized level. (Tr. at 332.) On August 23, 2006, Claimant was referred to a neurosurgeon based on these results. (Tr. at 555, 559.)

On September 20, 2006, Seyed Abdi Ghodsi, M.D. examined Claimant. Claimant reported low back and bilateral leg pain on and off for at least ten years, but had noticed increasing symptoms over the last three years. (Tr. at 335.) In a letter from Teresa Cochran, R.N., FNP-C, approved by Dr. Ghodsi, Ms. Cochran indicated that they did not have access to the MRI of the lumbar spine from "August of 2005 [sic 2006]" suggesting a small central disc bulge

9

at L5-S1 but no significant neural element compromise. Ms. Cochran had requested the records and stated that "[i]f there are no significant findings, we will ask him to proceed with therapy and see Dr. Lundquist for possible pain management. Based on the report, there does not appear to be any neurosurgical etiology. Therefore, we will most likely proceed with nonoperative measures." (Tr. at 336.)

On October 11, 2006, a State agency medical source, Cindy Osborne, D.O., completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work. (Tr. at 571-78.)

Claimant underwent physical therapy from October 3, 2006, to October 27, 2006. (Tr. at 320-28.) X-rays on December 20, 2006, revealed mild degenerative disc disease. (Tr. at 330.) In early 2007, Claimant also received two bilateral medial branch blocks at L3, L4 and L5 levels and a lumbar radiofrequency denervation at the L3, L4 and L5 levels. (Tr. at 366, 369, 371.)

Wendi Lundquist, D.O., who administered the bilateral medial branch blocks, completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on February 22, 2007, and opined that Claimant could lift only ten pounds occasionally and frequently, that he could only stand or sit for twenty minutes at a time and could never stoop, crouch, kneel or crawl. Dr. Lundquist opined that Claimant's disability commenced in 2000.

(Tr. at 337-39.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's finding that Claimant could perform medium work prior to September 20, 2006, is not supported by substantial evidence; and (2) even if Claimant could perform medium work prior to September 20, 2006, the ALJ erred in finding that Claimant could perform work which exists in significant numbers in the national economy. (Pl.'s Br. at 9-16; Pl.'s Reply at 1-5.)

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant was not disabled; and (2) the ALJ did not err at the final step of the sequential analysis. (Def.'s Br. at 7-10.)

Claimant argues that the ALJ's finding that he can perform medium level work prior to September 20, 2006, is not supported by substantial evidence. (Pl.'s Br. at 10.)

In his decision, the ALJ found that Claimant had the severe impairments of COPD, lumbosacral disc disease, carpal tunnel syndrome, high blood pressure, cervical disc disease and borderline intellectual functioning. Prior to September 20, 2006, the ALJ found that Claimant was capable of medium level work, reduced by an ability to frequently balance, stoop, kneel, crouch and crawl, a need to avoid concentrated exposure to temperature extremes, fumes,

odors, dust, gases and poor ventilation and that he was limited to routine, repetitive tasks that involve no greater than incidental public contact. (Tr. at 15.) The ALJ further stated that

> [o]n September 20, 2006, the claimant was seen for a neurosurgical consultation by Seyed Adbi Ghodsi, M.D., with complaints of low back pain and bilateral leg pain (Exhibit 12F). The record indicates the claimant underwent physical therapy for treatment of back pain beginning on October 3, 2006. On October 27, 2006, he was discharged from physical therapy with only temporary improvement in his condition after undergoing 12 sessions (Exhibit 11F). The record indicates the claimant has undergone epidural steroid injections, radiofrequency denervation and nerve block for back pain (Exhibits 15F, 16F and 17F). Based on this evidence, the claimant's condition deteriorated beginning on September 20, 2006.

(Tr. at 20.)

Claimant argues, relying on Bailey v. Chater, 68 F.3d 75, 79-80 (4th Cir. 1995), that the ALJ should have obtained testimony from a medical expert about the onset of Claimant's disability. (Pl.'s Br. at 10.) Claimant asserts that there is no evidence to support the ALJ's conclusion that Claimant could perform medium work on September 19, 2006, but could only perform light work the following day. Because the onset of Claimant's disability must be inferred from the medical evidence, Claimant asserts that pursuant to Bailey, the ALJ should have called a medical expert to testify at the administrative hearing. Claimant asserts that he complained of back pain, which Dr. Agas described as chronic, as early as November 7, 2003. (Pl.'s Br. at 10-11.)

The Commissioner argues that the ALJ considered all of the

12

opinion evidence of record in finding that Claimant was capable of medium work prior to September 20, 2006. The Commissioner asserts that the medical evidence of record does not support a finding that Claimant was disabled prior to September 20, 2006. Finally, the Commissioner contends that Claimant's reliance on Bailey is misplaced because the evidence of record regarding onset was not ambiguous. The Commissioner avers that "[n]otwithstanding diagnostic evidence of disc disease dating back to 2003, Plaintiff required only symptomatic treatment (Tr. 179-97, 319, 332, 340-63). His condition did not reach disabling severity until September 20, 2006, when he required neurosurgical consultation with Dr. Ghodsi (Tr. 335-36). Therefore, consultation with a medical advisor was not necessary." (Def.'s Br. at 9-10.)

In reply, Claimant argues that the Commissioner defends the ALJ's decision based on reasons not cited by the ALJ in his decision. Further, Claimant asserts that the Commissioner's statement that he was referred to Dr. Ghodsi on September 20, 2006, is factually incorrect, as he was referred on August 23, 2006. Claimant points out that the referral was made based on the results of an MRI on August 5, 2006. Claimant argues that the results of that MRI, showing a small central disc protrusion at L5-S1, were nearly identical to an MRI report dated October 22, 2005, showing a mild bulging disc at L5-S1. According to Claimant, there is nothing in the record to suggest that Claimant's condition

deteriorated on September 20, 2006. Instead, Claimant asserts that his condition remained unchanged for "at least 11 months prior to that date." (Pl.'s Reply at 1-2.)

Social Security Ruling ("SSR") 83-20's purpose is "to state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act ...." SSR 83-20, 1983 WL 31249, *1 (1983). SSR 83-20 directs that "[i]n disabilities of a nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case." Id. at *2.

Regarding medical and other evidence in particular, SSR 83-20 directs that

> [m]edical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.
>
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describes the history and symptomatology of the disease

process.

\*\*\*

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

Id.

Thus, SSR 83-20 provides that

[i]n some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

Id. at \*3.

In Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995), our Court of Appeals indicated that SSR 83-20's "language does not expressly

15

mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred. Nevertheless, if the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires." In Bailey, the ALJ, "'[g]iving the claimant the benefit of any doubt,'" set the claimant's onset date six months prior to when she underwent consultative examinations. Id. at 78 (quoting ALJ's decision). Claimant filed a request for review with the Appeals Council and submitted additional evidence suggesting she was disabled even earlier than the ALJ concluded. Id. In Bailey, the Fourth Circuit reasoned that "[a]lthough the ALJ found that numerous ailments conspired to render [the claimant] permanently unable to work, the date on which the synergy reached disabling severity remains an enigma." Id. at 79. As a result, "the ALJ did not have the discretion to forgo consultation with a medical advisor." Id.

The court proposes that the presiding District Judge find that substantial evidence does not support the ALJ's date of disability onset. The ALJ's decision indicates that he believed Claimant was disabled based on Claimant's attendance at physical therapy sessions with only temporary improvement in October of 2006, and the fact that Claimant had received steroid injections and other treatment in early 2007. Because Claimant was seen by Dr. Ghodsi for a neurosurgical consultation on September 20, 2006, which lead

16

to the above treatments, the ALJ concluded that Claimant's condition deteriorated as of this date.

In Bailey, the ALJ essentially chose the onset date randomly without any basis in the medical evidence for onset as of this date. Though perhaps not as random as the onset date in Bailey, the onset date chosen by the ALJ in the instant matter does not reflect a consideration of all the evidence of record. In particular, the ALJ does not fully address the evidence of record prior to onset or fully explain why Claimant's disability deteriorated and disability began as of September 20, 2006, when he visited Dr. Ghodsi, and not sooner. The evidence of record as to onset of Claimant's disability is complicated and ambiguous. As Claimant points out, MRI results from as early as October of 2005, indicate nearly identical results as the MRI from August of 2006, which spurred Claimant's referral to Dr. Ghodsi. As a result, pursuant to SSR 83-20 and Bailey, the opinion of a medical expert regarding onset is in order.

Because the court has recommended remand as noted above, the court need not fully reach the next argument raised by Claimant, except to note that the ALJ did find Claimant's carpal tunnel syndrome to be a severe impairment, but did not include any limitations in the residual functional capacity finding.[1] This is

---

[1] Notably, Claimant was diagnosed with mild carpal tunnel syndrome, and a State agency medical source opined that he was limited in handling and fingering. (Tr. at 198-204.)

17

problematic in light of the testimony from the vocational expert that if Claimant were limited to occasional use of the upper extremities, there would be no medium jobs available. (Tr. at 618.) If Claimant is capable of only light level work, he is disabled under the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpt. P, App. 2, Rule 202.02 (2008).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings to determine the date of onset of disability and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

June 22, 2009
Date

Mary E. Stanley
United States Magistrate Judge